IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

STATE AUTO PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Plaintiff,

v.                        CIVIL ACTION NO. 1:13-03878

MARANDA JEAN ELLIS, EXECUTRIX
OF THE ESTATE OF CHANCE THOMPSON, et al.,

      Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court are the defendants' motions to either dismiss this action or, in the alternative, stay this case until resolution of the underlying state court action.  (Docs. No. 7 and 10).  For the reasons set forth below, the motions are granted in part and denied in part.

## I.  <u>Factual and Procedural Background</u>

On or about September 24, 2012, Maranda Jean Ellis filed a wrongful death action against her brother, Wesley Kurt Milam, Jr., in the Circuit Court of Mercer County.  In her state-court complaint, Ellis alleges that, on or about July 9, 2011, defendant Milam was "backing out of the driveway when he negligently, carelessly and recklessly backed over Chance Thompson, resulting in the death of Chance Thompson."  Ellis was Chance Thompson's mother and brought the wrongful death action as the executrix of Chance Thompson's estate.

At the time of the accident, Milam was driving a vehicle owned by Chad Thompson, the father of Chance Thompson.  The vehicle was insured through a policy issued by State Auto Property and Casualty Insurance Company ("State Auto") to Karen Thompson, Chad Thompson's mother.  Prior to the filing of the wrongful death lawsuit, the Estate of Chance Thompson made a demand to State Auto for the policy limits of Karen Thompson's policy.  <u>See</u> Exhibit 3 to Complaint for Declaratory Judgment.

Approximately five months after the wrongful death lawsuit was filed, on February 28, 2013, State Auto filed the instant declaratory judgment action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  State Auto asks this court to determine that no coverage exists for Milam under the State Auto policy because, according to State Auto, although Chad Thompson gave permission to Brandi Belcher to drive his vehicle on the date of the accident, he did not give permission to Milam because Milam did not have a driver's license.  Complaint for Declaratory Relief at p. 4.  The Complaint further alleges that Milam "was operating the vehicle without the knowledge or permission of Chad Thompson and was operating the vehicle against the express directives of Chad Thompson, who had only given permission to Brandi Belcher to drive the vehicle."  <u>Id.</u>  Because the State Auto policy excludes coverage for any "insured . . . [u]sing a vehicle without reasonable belief that `insured' is

-2-

entitled to do so[,]" State Auto contends that no coverage exists
for Milam as he did not have Chad Thompson's permission to drive
the vehicle.  Id. at pp. 5-6.

In their Complaint for Declaratory Relief, State Auto asks
this court to determine:

1.   That the language of the State Auto Insurance
     policy is clear and unambiguous;

2.   That, pursuant to the clear and unambiguous
     language of the subject policy, the policy does
     not provide coverage for Wesley Kurt Milam, Jr.
     and his actions on or about July 9, 2011, as he
     did not have permission to operate the vehicle
     owned by Chad Thompson;

3.   That, pursuant to the clear and unambiguous
     language of the subject policy, the policy does
     not provide coverage for the bodily injury,
     property damage, or any other claim for damages
     alleged by Maranda Jean Ellis or any allegations
     raised in the Complaint of Maranda Jean Ellis;

4.   That State Auto be awarded the costs of its
     prosecution of this declaratory judgment action to
     include attorney fees, if such is supported by
     law; and,

5.   That State Auto be granted such other and further
     relief as may be determined just and proper.

Complaint for Declaratory Relief at p. 8.

After this declaratory judgment action was filed, on April
9, 2013, Ellis filed a motion for leave to amend her complaint in
the state court action in which she sought to add State Auto as a
defendant and add a claim seeking a declaratory judgment as to
the coverage issue.  By Order entered October 3, 2013, the
Circuit Court of Mercer County granted Ellis' motion to amend.

-3-

The state court, however, bifurcated the coverage issue from the underlying tort claim.

Defendants' motions to dismiss and/or stay urge the court to decline to exercise its authority under the Declaratory Judgment Act in favor of allowing the issue of coverage to be resolved by the pending state action.

## II.  <u>Analysis</u>

The Federal Declaratory Judgment Act ("the Act") provides in pertinent part that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  This Act, which is permissive on its face, is understood to bestow upon federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants."  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995)(noting language of statute that a court "may" declare the rights and legal relations of interested parties).

In exercising its discretion, a court is to consider (1) whether the judgment would "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) whether the judgment would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

-4-

<u>Aetna Cas. & Sur. Co. v. Quarles</u>, 92 F.2d 321, 325 (4th Cir. 1937).  Courts are cautioned against issuing declaratory judgments where the result would be "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted."  <u>Id.</u>

The Fourth Circuit Court of Appeals has enunciated four specific factors by which the court's analysis is to be guided:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; . . . (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law" [; and (iv)] whether the declaratory judgment action is being used merely as a device for "procedural fencing" – that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

<u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d 255, 257 (4th Cir. 1996)(<u>quoting</u> <u>Nautilus Ins. Co. v. Winchester Homes, Inc.</u>, 15 F.3d 371, 376 (4th Cir. 1994)).

Although State Auto contends that these factors weigh against dismissal and/or stay of this declaratory judgment action,[1] the court disagrees.  Applying the four <u>Nautilus</u> factors

---

[1] Indeed, State Auto seems to argue that this court need not even consider the <u>Nautilus</u> factors in deciding whether to exercise jurisdiction in this case.  <u>See</u> Doc. No. 11 at p. 7, "State Auto's Response to Defendant, Maranda Jean Ellis', Motion

-5-

to the instant case, the court is persuaded that the parties' dispute ought to be resolved through the pending state action. With respect to the first <u>Nautilus</u> factor, the court finds that it weighs heavily in favor of dismissal.  Notwithstanding State Auto's assertions to the contrary, the court finds that resolution of the coverage issue will involve "difficult, complex, or unsettled" questions of state law.  <u>Nautilus</u>, 15 F.3d at 378.

The policy at issue excludes coverage for any insured "[u]sing a vehicle without reasonable belief that `insured' is entitled to do so."  Complaint ¶ 18 (quoting policy).  Such a provision is commonly referred to as an "entitlement exclusion." <u>See, e.g.</u>, <u>Newell v. Nationwide Mut. Ins. Co.</u>, 432 S.E. 2d 284, 285 (N.C. 1993); <u>see also</u> <u>State Farm Mut. Auto. Ins. Co. v. Wilson</u>, No. 01-5470, 54 Fed. App'x 607, 609 (6th Cir. 2002) (referring to language in insurance policy excluding coverage for any person "[u]sing a vehicle without a reasonable belief that

---

to Dismiss or Stay" ("Notwithstanding the <u>Quarles</u> analysis, which State Auto contends should negate any further discussion of the propriety of this Court's exercise of jurisdiction in this matter, State Auto would also aver than under the four-part test in <u>Nautilus</u>, that it can still establish that such jurisdiction is proper.").  However, the United States Court of Appeals for the Fourth Circuit has made clear that the <u>Nautilus</u> factors should continue to guide a court's discretion in this regard. <u>See</u> <u>Minnesota Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP</u>, 355 Fed. App'x 698, 699 n. 1, 2009 WL 4506462 (4th Cir. Dec. 4, 2009) ("[T]he factors articulated [in <u>Nautilus</u>] which guide the district court's exercise of discretion in a declaratory judgment action remain applicable.").

that person is entitled to do so" as an "entitlement exclusion"). The court has not located, nor has State Auto cited, any West Virginia case that has interpreted an entitlement exclusion. This is particularly significant given that "there has been a great deal of confusion regarding [the] interpretation" of such a provision. Darla L. Keen, Note, <u>The Entitlement Exclusion in the Personal Auto Policy: The Road to Reducing Litigation in Permissive Use Cases Or a Dead End?</u>, 84 Ky. L. J. 349-50 (1995).[2] For example, there is a split of authority "among the jurisdictions concerning whether entitlement exclusions are ambiguous,[3] or otherwise operate to bar coverage, when the driver lacks a valid driver's license." <u>Progressive Northern Ins. Co. v. Concord General Mut. Ins. Co.</u>, 864 A.2d 368, 373 (N.H. 2005) (and authorities cited therein).

_____

[2] Noting that while such policies are often referred to as "plain language" policies, they are "more difficult to understand than the policies written before some insurance carriers decided to make them easier to read." <u>Allstate Ins. Co. v. United States Fid. and Guar. Co.</u>, 663 F. Supp. 548, 552 (W.D. Ark. 1987).

[3] Several courts have found entitlement exclusions to be ambiguous. <u>See, e.g.</u>, <u>Mikelson v. United Services Auto Assoc.</u>, 111 P.3d 601, 619 (Haw. 2005) (affirming lower court's holding that entitlement exclusion was capable of at least three interpretations and, therefore, ambiguous); <u>Hurst v. Grange Mut. Cas. Co.</u>, 470 S.E. 2d 659, 663 (Ga. 1996) (same). Other courts have determined that such language is not ambiguous. <u>See, e.g.</u>, <u>York v. Kentucky Farm Bureau Mut. Ins. Co.</u>, 156 S.W. 3d 291, 293 (Ky. 2005).

Furthermore, State Farm seems to suggest that the alleged lack of permission and/or a driver's license should end the inquiry.  However, this is not necessarily true.

> [T]he fact that [driver] knew that he had no legal
> right to drive, is distinguishable from the dispositive
> question under the policy exclusion of [driver]'s
> reasonable belief of being "entitled" to drive the
> vehicle based upon the permission of the person in
> possession of the vehicle.  The question under the
> policy is not one of legality – whether the operator
> had legal permission of the owner, or legal permission
> from the state in the form of a valid driver's license;
> rather it is a question of fact – did the operator have
> a reasonable belief that, at the time of the accident,
> he was entitled to drive the vehicle?  In such cases,
> the ultimate question is one of the state of mind of
> the operator, a factual question for the jury.

Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co., 392 S.E. 2d 377, 379 (N.C. 1990); see also Cooper v. State Farm Mut. Auto. Ins. Co., 849 F.2d 496, 499 (11th Cir. 1988) (holding "that under North Carolina law one need not necessarily show that he had a legal right to drive to establish a reasonable belief of entitlement under" entitlement exclusion).

"The term `reasonable belief' requires both that the driver have a subjective belief that he is `entitled' to use the car and that such belief is objectively sound." Progressive Northern Ins. Co. v. Concord General Mut. Ins. Co., 864 A.2d 368, 372 (N.H. 2005).  Because of this, some courts contend that the issue may be decided as a matter of law while others argue that it is a question of fact.  See Haulers Ins. Co., Inc. v. Pounds, 272 S.W. 3d 902, 906 n.2 (Mo. Ct. App. 2008) (and cases cited therein).

-8-

West Virginia has yet to speak on the issue.  In the Amended
Complaint filed in the state court action, Ellis alleges that
Wesley Milam "reasonably believed that he was permitted to drive
the vehicle on July 9, 2011."  Doc. No. 10, Exhibit 1 at p. 3,
Amended Complaint in Civil Action No. 12-C-522.  Resolution of
this question will necessarily depend on the facts of the case
and their likely intersection with various aspects of West
Virginia insurance law in this area.

   In addition, both Ellis and Milam contend that, in resolving
the coverage issue, a court will have to consider West Virginia's
mandatory omnibus coverage.  That section found at West Virginia
Code § 33-6-31(a) provides in pertinent part:

> No policy or contract of bodily injury liability
> insurance, or of property damage liability insurance,
> covering liability arising from the ownership,
> maintenance or use of any motor vehicle, shall be
> issued or delivered in this State to the owner of such
> vehicle, or shall be issued or delivered by any insurer
> licensed in this State upon any motor vehicle for which
> a certificate of title has been issued by the
> department of motor vehicles of this State, unless it
> shall contain a provision insuring the named insured
> and any other person, . . . responsible for the use of
> or using the motor vehicle with the consent, expressed
> or implied, of the named insured or his spouse against
> liability for death or bodily injury sustained or loss
> or damage occasioned within the coverage of the policy
> or contract as a result of negligence in the operation
> or use of such vehicle by the named insured or by such
> person. . . Provided, That in any such automobile
> liability insurance policy or contract, or endorsement
> thereto, if coverage resulting from the use of a non-
> owned automobile is conditioned upon the consent of the
> owner of such motor vehicle, the word "owner" shall be
> construed to include the custodian of such non-owned
> motor vehicles.

West Virginia's highest court has been clear "that the primary purpose of the omnibus clause in a policy is to maximize the availability of insurance proceeds; that the principal beneficiary of the clause is the general public; and that the clause is remedial in nature and must be construed liberally so as to provide insurance coverage where possible." Burr v. Nationwide Mut. Ins. Co., 359 S.E.2d 626, 632 (W. Va. 1987).

State Auto does not address the possible impact of omnibus coverage on the coverage issue in this case. For example, State Auto insists that Chad Thompson did not give permission to Milam to drive the car. It does admit, however, that permission was given to Brandi Belcher to drive the vehicle at issue. Given this, was Brandi Belcher a "custodian" within the meaning of W. Va. Code § § 33-6-31(a)? See Metropolitan Prop. and Liab. Ins. Co. v. Acord, 465 S.E. 2d 901, 908 (W. Va. 1995) (holding that for person to be "custodian" of nonowned motor vehicle as contemplated by § 33-6-31(a) and thus to be empowered to grant permission to another to drive the vehicle so that such driver can invoke automobile liability coverage, person must be entrusted, either expressly or impliedly with the possession of the automobile by the named insured or spouse). Likewise, a related question that might arise herein is the scope of West

-10-

Virginia's "initial permission" rule.[4]  These questions appear
somewhat unsettled under West Virginia law and these issues are
more appropriately decided by a state court.

Accordingly, the court finds that the State of West Virginia
has a compelling interest in having its own courts decide this
dispute, see Glenmont Hill Associates v. Montgomery County, 291
F. Supp. 2d 394 (D. Md. 2003) (explaining that when state law
controls resolution of declaratory judgment action, there exists
an interest in having the most authoritative voice speak on the
meaning of applicable law, and that voice belongs to the state
courts); SEC v. Nat'l Sec., Inc., 393 U.S. 453, 459 (1969)
("[T]he state's interest is stronger in questions of insurance
law."), and therefore that the "state interest" factor  weighs in
favor of declining jurisdiction.

Insofar as a decision in this matter is likely to break new
ground, the state's interest in this case is significant and,
therefore, the first Nautilus factor weighs in favor of this
court's refusal to exercise jurisdiction.

---

[4] In Bennett v. State Farm Mut. Auto. Ins. Co., the United
States Court of Appeals for the Fourth Circuit held that, under
West Virginia's omnibus statute, where parents loaned car to son
who in turn loaned car to a friend, the parents' consent passed
to the friend.  887 F.2d 1078, 1989 WL 117846, *2 (4th Cir. 1989)
(unpublished).  Likewise, other jurisdictions hold that when an
insured loans a car to a permittee with no restrictions, a sub-
permittee operates the car with the policyholder's implied
permission.  See, e.g., Allstate Ins. Co. v. American States Ins.
Co., 816 P.2d 709, 711 (Or. App. 1991).

B.  *Efficiency*

When addressing the efficiency factor, the Fourth Circuit has urged district courts to conduct a "careful inquiry into 'the scope of the pending state court proceeding,' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in [the state proceeding]." <u>Nautilus</u>, 15 F.3d at 378-379 (<u>quoting</u> <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 495 (1942)).

While the state court proceeding encompasses all the issues presented by State Auto in this case, however, the inverse is not true because the underlying negligence count is not before this court.  Accordingly, this federal action would not settle the entire controversy because the liability issues would still need to be settled by the state court.  On the other hand, the case pending in the  Circuit Court of Mercer County could resolve all the issues between all the parties.  Thus, it is more efficient for a single court to decide both the coverage and liability issues rather than to have this court determine whether coverage exists while a state court will still be necessary to reach the issue of liability.  <u>See</u> <u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d 255, 258 (4th Cir. 1996) ("Thus, although issuance of a declaratory judgment would settle part of the controversy . . . it certainly would not settle the entire matter.  The state

litigation, on the other hand, could resolve all issues, and we note that significant discovery has already been undertaken in that action.  Concern for efficiency and judicial economy clearly support the district court's decision [to dismiss the declaratory judgment action].").

Moreover, a federal declaration that State Auto has no duty to indemnify could be rendered totally unnecessary by a subsequent state verdict for Milam in the underlying state action.  See Indemnity Ins. Co. v. Schriefer, 142 F.2d 851, 853 (4th Cir. 1944) ("There could be no possible justification for dragging into the federal court the litigation of the issues pending in the state court, for the sake of obtaining a declaratory judgment as to a matter which will have no practical significance if the defendants prevail in the state court, and which the company can litigate as well after the termination of the state court litigation as now, if the defendants do not prevail."); see also Mitcheson v. Harris, 955 F.2d 235, (4th Cir. 1992) ("[A] federal declaration that an insurer had no duty to indemnify could be rendered totally unnecessary by a subsequent state verdict for the insured in the underlying state action.").

Accordingly, the court finds that the "efficiency" factor weighs in favor of this court declining jurisdiction.

C.  *Entanglement*

-13-

The Fourth Circuit has held that all issues of a case should be resolved in a single court system. See Mitcheson, 955 F.2d at 239. Exercising jurisdiction over the federal declaratory judgment action here could result in unnecessary entanglement between the state and federal courts. The same legal and factual issues are now being litigated in a pending state action between the same parties. As State Auto's complaint herein makes clear, resolution of the coverage issue will necessarily be dependent on the facts of the case as they are borne out and it is clear that there are overlapping factual issues between the two actions. For example, the issue of whether Milam did in fact have a valid driver's license, as alleged as critical in this proceeding, will likely be relevant on the question of negligence in the state court action.

Accordingly, the court finds that the "entanglement" factor weighs in favor of declining jurisdiction.

D.  *Procedural Fencing*

As to the fourth Nautilus factor, although State Auto filed this action months after the state court action was filed, the court is unpersuaded that the filing of this lawsuit was done merely as a device for procedural fencing. As originally filed, the state court action did not include a count for declaratory relief regarding the coverage issue. For this reason, the court

finds the fourth _Nautilus_ factor weighs neither for or against dismissal of this action.


E.    _Stay_

      Applying the four _Nautilus_ factors to the instant case, the court is persuaded that the parties' dispute ought to be resolved through the pending state action.  Thus, the court declines to assert jurisdiction at this time, specifically finding that the "state interest" factor carries the most weight.  _Pennsylvania Nat. Mut. Ins. Co. v. Ely Wall & Ceilings, Inc._, No. 4:04-1576, 2006 WL 569589 *1, 3 (D.S.C. Mar. 6, 2006) ("In the opinion of this court, [the state interest factor] is perhaps the most important consideration.").

      Dismissal, however is not the appropriate remedy here.  The Supreme Court in _Wilton_ noted that,

> where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.

_Wilton_, 515 U.S. at 288 n.2.  As such, the court stays this action pending resolution of the litigation filed in the Circuit Court of Mercer County, West Virginia.

### III.  Conclusion

      Based on the foregoing, the court hereby **DENIES** defendants' Motions to Dismiss and/or Stay, inasmuch as they request

-15-

dismissal and **GRANTS** the motions to the extent they request a stay.  This action is therefore **STAYED** pending disposition of the related suit currently pending in the Circuit Court of Mercer County, West Virginia and the Clerk is directed to remove the case from the court's active docket.  The parties are **DIRECTED** to inform the court promptly in writing of the state court disposition.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

It is **SO ORDERED** this 11th day of February, 2014.

ENTER:

David A. Faber
Senior United States District Judge

-16-